**COURT OF APPEALS NO. 22-14234**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

**A.W. by and through J.W.;
E.M. by and through B.M.;
M.F. by and through J.C.; and
D.G. by and through D.G.,**

*Appellants,*

V.

**COWETA COUNTY SCHOOL DISTRICT AND CHRISTI HILDEBRAND,**

*Appellees.*

---

**On Appeal from The United States District Court
Northern District of Georgia
Honorable Timothy C. Batten
3:21-00218-TCB**

---

**APPELLANTS' OPENING BRIEF**

---

**DAVID S. BALLARD**
Georgia Bar No. 635107
dballard@ballardlaw.us

**BALLARD LAW OFFICE, LLC**
113 Glynn Street South
Fayetteville, Georgia 30214
Phone: 770-461-4222
Fax: 770-461-8420

*Attorney for the Appellants*

**Case No. 22-14234**
**A.W. by and through J.W. et al. v. Coweta County School District, et. al.**

**Certificate of Interested Persons and**
**Corporate Disclosure Statement**

Under Federal Rule of Appellate Procedure Rule 26.1 and Eleventh Circuit

Rule 26.1-1, all Appellants file the following Certificate showing these entities and

individuals have an interest in the outcome of this case and this appeal:

**Courts/ Judges:**

1. The Honorable Timothy C. Batten, Sr., Chief Judge,
   U.S. District Court Northern District of Georgia.

**Counsel for Appellants:**

2. Ballard Law Office, LLC

3. Ballard, David Scott

4. Gassert, Mikela Morgan

5. Whitehead, Jin

**Appellants[1]:**

6. A.W. by and through J.W.

7. E.M. by and through B.M.

_____

[1] Appellants are minors with disabilities. This action is brought by their parents.
Given the sensitive nature of this action and the allegations contained in the
complaint, counsel asks the Court for permission to file the full names of the
children and parents under seal should the Court require additional information for
purposes of the CIP.

8. M.F. by and through J.C.

9. D.G. by and through D.G.

**Appellees and Appellees' Counsel:**

10. Barnett, Beth

11. Copeland, Andrew

12. Coweta County School System

13. Dees, Amy

14. Elm Street Elementary School

15. Farmer, Frank

16. Freeman, Mathis & Gary, LLP

17. Guy, Marc

18. Hendrix, Shannon

19. Hildebrand, Christi

20. Hill, Michael M.

21. Horton, Evan

22. Jackson, Dean

23. Kesselring, Ken

24. Marshall, Nicole

25. Melnick, Wayne Steven

26. Menk, Linda

27. Robertson, Larry

28. Sprague, Catherine

29. Walden, Melinda

## STATEMENT REGARDING ORAL ARGUMENT

Appellants request oral argument. This case involves an issue of first impression for this Court, namely whether the 2022 holding of the United States Supreme Court in *Cummings v. Premier Rehab Keller, P.L.L.C* barring emotional distress damages under Section 504 of the Rehabilitation Act of 1973 also bars emotional distress damages under Title II of the Americans with Disabilities Act. Because this matter is developing in courts around the country, new persuasive authority is likely to emerge following the parties' submission of their briefs. Oral argument would allow the parties to apprise the Court of these developments.

This case may also present the Court with the opportunity to elucidate its substantive due process precedents in the context of school abuse, particularly where elementary school students with cognitive and physical disabilities allege psychological trauma caused by an administrator's deliberate indifference to their safety and well-being.

# Table of Contents

Certificate of Interested Persons and Corporate Disclosure Statement ................C-1

Statement Regarding Oral Argument ....................................................................... i

Table of Contents ................................................................................................... ii

Table of Citations .................................................................................................. iii

Jurisdictional Statement ........................................................................................ vi

Statement of the Issues ........................................................................................... 1

Statement of the Case ............................................................................................. 2

Summary of the Argument .................................................................................... 10

Argument............................................................................................................... 12

    I.      The District Court Erred by Dismissing Students' Claims Under Title II on the Grounds That No Relief Was Available. ....................................13

          A. Emotional Damages Are Recoverable for Intentional Violations of Title II ............................................................................................ 14

          B. Students Alleged Facts Entitling Them to Other Types of Compensatory Damages and Requested Those Damages in Their Proposed Amended Complaint ......................................................... 26

    II.     The District Court Erred by Dismissing Students' 1983 Claims Under an Incorrect Legal Standard. ....................................................................... 30

          A. Students Have Properly Pled A Violation Of Their Substantive Due Process Rights Under The Fourteenth Amendment. ........................ 31

          B. Students Have Pled Sufficient Facts to Overcome Hildebrand's Qualified Immunity Defense at this Stage ……………………….... 38

          C. The District Court Erred in Finding Hildebrand's Acts and Omissions Could Not impose *Monell* Liability Upon the District ......................... 41

Certificate of Compliance....................................................................................... 48

Certificate of Service .............................................................................................49

# Table of Citations

## Cases

*Alexander v. Choate*, 469 U.S. 287 (1985)...............................................................22

*Alexander v. Thomas Univ., Inc*., No. 7:21-cv-86, 2023 WL 2307612 (M.D. Ga. 2023) ........................................................................................................................27

*Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) .............34

*Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)...........................................................26

*B.M. ex rel M.F. v. Thompson*, No. 3:13-CV-J-12JBT, 2013WL 4547344 (M.D. Fla. Aug. 27, 2013) ...........................................................................................34

*Banai v. Sec'y, U.S. Dep't of Hous & Urban Dev. ex rel.* Times, 102 F.3d 1203, 1207, n. 4 (11th Cir. 1997)...................................................................................18

*Barnes v. Gorman*, 536 U.S. 181 (2002) ....................................................... 14, 19, 21

*Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 874 (9th Cir. 2017)................29

*Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356 (2001) ............. 23, 24

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)....................................31

*Bell v. Hood*, 327 U.S. 678, 684 (1946)..................................................................16

*Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007) ....................12

*Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) .......................13

*Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002)........................................27

*Brown v. GSA*, 425 U.S. 820, 828 (1976)...............................................................20

*Cannon v. Univ. of Chicago*, 441 U.S. 677, 711 (1979)........................................20

*Carey v. Piphus*, 435 U.S. 247, 264 (1978) ...........................................................18

*Chaney v. Fayette Cnty. Pub. Sch. Dist.*, 977 F. Supp 2d 1308, 1319 (N.D. Ga. 2013) ....................................................................................................................42

*Christman v. Walsh*, 416 F. App'x 841, 844 (11th Cir. 2011)). .............................11

*City of Cleburne, Tex. V. Cleburne Living Ctr.*, 473 U.S. 432 439 (1985).............26

*City of Miami v. Citigroup, Inc.*, 801 F.3d 1268, 1275 (2015).................................9

*City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 263 (1981) ........................21

*Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 632-36 (1984) ......................22

*Cummings v. Premier Rehab Keller, P.L.L.C*, 142 S. Ct. 1562 (2022)........ 8, 10, 13

*D.D.T. v. Rockdale Cnty Pub.Sch.*, 580 F. Supp. 3d 1314 (N.D. Ga. 2021) . ..34, 37, 43, 45

*Dacosta v. Nwachukwa* 304 F.3d. 1045 (11th Cir. 2002)......................... 35, 36, 37

*Dingxi Longhai Dairy, Ltd. v. Becwood Tech. Grp. L.L.C.*, 635 F.3d 1106, 1108 (8th Cir. 2011)....................................................................................................28

*Doe v. Broward Cnty.,* 604 F.3d 1248, 1266 (11th Cir. 2010)...............................40

*Doe v. Fairfax Cnty Sch. Bd*., No. 1:18-cv-00614, 2023 WL 424265 (E.D. Va. Jan. 25, 2023) ................................................................................................27

*Doe v. Huntsville City Sch. Bd. of Educ.*, 546 F. Supp 3d 1043 (N.D.. Ala. 2021) 33

*Doe v. Sch. Bd. of Broward Cnty.,* 604 F.3d 1248, 1255 (11th Cir. 2010) .............44

*Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 66 (1992)....................16

*Fry v. Napolean Cnty. Schs.*, 580 U.S. 154, 160 (2017)..........................................12

*Hale v. Tallapoosa Cnty*, 50 F.3d 1579, 1582 (11th Cir. 1995) .............................30

*Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) .....................................40

*Hill v. White*, 321 F.3d 1334, 1335 (2003) ..............................................................9

*Hoefling v. City of Miami*, 811 F.3d. 1271, 1281 (11th Cir. 2016) ........... 31, 42, 44

*Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1292 (11th Cir. 2004)......43

*Ingham v. Wright*, 430 U.S. 651, 674 (1977).......................................................25

*J.S., III ex rel. J.S., Jr. v. Houston Cnty. Bd. of Educ.*, 877 F.3d 979, 985 (11th Cir. 2017) . ................................................................................................44

*Keating v. City of Miami*, 598 F.3d. 753, 762 (11th Cir. 2010) .............................39

*L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1330 (11th Cir. 2020) ..... 32, 37

*Laird v. Integrated Resources, Inc.,* 897 F.2d 826, 841 (5th Cir. 1990) .......... 13, 27

*Levine v. World Fin. Network Nat'l Bank*. 437 F.3d 1118, 1124 (11th Cir. 2006).....
............................................................................................................28, 29, 30

*Matthews v. Columbia County,* 294 F.3d 1294, 1297) (11th Cir. 2002) ..………..44

*Memphis v. Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986).....................17

*Monell v. Dep't of Local Servs.,* 436 U.S. 658, 690 (1978) ..……………… 30, 44

*N.P. ex rel. Perillo*, 2019 WL 4774037 (2019) .....................................................39

*Neal ex rel. Neal v. Fulton Cnty. Bd. of Educ.*, 229 F. 3d 1069 (11th Cir. 2000) . 25, 39

*Nix v. Franklin Cnty. Sch. Dist.* 311 F.3d. 1373, 1379, n.2 (11th Cir. 2002)..........32

*Patterson v. McClean Credit Union*, 491 U.S. 164 (1989) .....................................19

*Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986) …………………….............. 44

*Pennhurst State Sch. and Hosp. v. Halderman*, 451 U.S. 1 (1981)........................19

*Peterson v. Baker*, 504 F.3d 1331 (11th Cir. 2007)................................................35

*Sapp v. Renfroe*, 511 F.2d 172, 176 n.3 (5th Cir. 1975)........................................30

*Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1174 (2003)................................16

*Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019) ...... 12, 13

*T.W. v. Sch. Bd. of Seminole Cnty Florida*, 610 F.3d 588, 601 (11th Cir. 2010)....34

*Tennessee v. Lane*, 541 U.S. 509 (2004) ...............................................................15

*United States v. Georgia*, 546 U.S. 151, 158-59 (2006).................................. 15, 24

*Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 800 (2021)........................................29

*Waddell v. Hedry Cnty Sheriff's Off.,* 329 F.3d. 1300, 1305 (11th Cir. 2003).........33

*Williams v. Fulton Cnty Sch. Dist.*, 181 F. Supp. 3d 1089, 1129 (N.D. Ga. 2016)
........................................................................................ .26, 40, 41, 42, 45

## Statutes

42 U.S.C. § 12101 (b)(4) ..............................................................15
42 U.S.C. § 12101 (b)(1) ..............................................................16
H. Amdt. 454 to Americans with Disabilities Act, H.R. 2273 ...............19
O.C.G.A. § 19-7-5..........................................................................40
O.C.G.A. § 20-2-50.........................................................................42

## Other Authorities

H.R. Rep. No. 101–485 (III), at 52 (1990) ...................................18
H.R. Rep. No. 101–485, pt. 2, at 84 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 366–6) .........................................................................................16

## Rules

28 C.F.R. Pt. 35, App. A ...............................................................19
Fed. R. Civ. P. 12(b)(6)......................................................... 9, 26, 33
Fed. R. Civ. P. 26(a)(1)(C) .............................................................28
L.R. 26.1(A)(L.R. N.D. Ga.)............................................................28

## Treatises

24 Williston on Contracts § 64:9 (4th ed. 2019) ...............................29
3 Farnsworth on Contracts § 1208 (4th ed. 2020) ..............................29
J. Perillo, Contracts § 14.2 (7th ed. 2014) .......................................29
Restatement (Second) of Contracts § 346 & cmt. b ............................29
Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1255 at 508-509 (3d ed. 2004)........38

## JURISDICTIONAL STATEMENT

This is an appeal of the final order from the United States District Court for the Northern District of Georgia dismissing with prejudice Appellants' complaint alleging causes of action against the Defendant-Appellees under Title II of the Americans with Disabilities Act ("ADA" or "Title II"), 42 U.S.C. §§ 12131-12133, and 42 U.S.C. § 1983 ("Section 1983").  This final order also denied Appellants leave to amend their complaint.

The district court had jurisdiction under 28 U.S.C. § 1331.  This Court has jurisdiction to reconsider the district court's final order under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1) Whether the district court erred in granting Appellees' motion to dismiss the Students' Title II claims based on its conclusion that damages for emotional distress are not compensable under Title II.

2) Whether the district court erred in refusing to allow Students to amend their Title II claims, given the availability of damages other than those for emotional distress.

3) Whether the district court erred in dismissing with prejudice Students' Section 1983 claims by weighing their likelihood of prevailing at final judgment instead of considering whether Students' allegations gave rise to a plausible claim for relief.

## STATEMENT OF THE CASE

### Statement of Facts

### I.    Students Are Extremely Vulnerable Children with Disabilities

Appellants A.W., E.M., M.F., and D.G. (collectively, "Students") are children with disabilities who, in the fall of 2019, attended Elm Street Elementary School ("Elm Street") in the Coweta County School System ("CCSS" or "the District"). Doc. 18-1 – Pg. 1.  Appellees include CCSS and Christi Hildebrand, who is and was Elm Street's principal.  *Id*. at 2.  The District is a public entity under Title II, 42 U.S.C. § 1213(2).  *Id.*

Students brought this action after suffering intentional discrimination and physical and emotional abuse by Elm Street officials in their special education classroom in the fall of 2019.  *Id.* at 8-18.  Students allege Hildebrand was the highest ranking CCSS official at Elm Street and had the authority to take remedial actions and implement the District's policies and practices.  *Id.* at 20-21.  Yet, despite repeated notifications that their classroom teacher was abusing Students physically and emotionally, CCSS and Hildebrand took no action for weeks and only minimal measures thereafter, allowing the teacher to continue abusing and discriminating against vulnerable students.  *Id.* at 19-25.

A.W. was twelve years old in the fall of 2019. *Id.* at 7. He has multiple disabilities, including significant developmental delays which impact his cognitive abilities and language skills. *Id.* at 7-8. He is "verbal but non-communicative," unable to self-advocate, and cannot protect himself from or report abuse. *Id.* at 7. A.W. also has Dravet syndrome, a rare and severe type of epilepsy, and is vulnerable to seizures. *Id.* at 8.

E.M. was eleven years old in 2019. *Id.* at 9. He has autism spectrum disorder and learning disabilities. *Id.* As of last year, he was an eighth-grade student with the cognitive ability of a second grader. *Id.* at 10. His disabilities limit his social understanding and ability to communicate. *Id.*

M.F. was ten years old in 2019 and has diagnoses of Downs Syndrome and autism spectrum disorder. *Id.* at 11. She also has a heart condition and is legally blind. *Id.* Like her classmates, M.F. is cognitively impaired. *Id.* Because of her disabilities, M.F. has limited communication skills, cannot verbalize misconduct she experiences or observes, and cannot protect herself from danger and abuse. *Id.*

D.G. was seven years old in 2019. *Id.* at 13. D.G. is a "slow learner" who is awaiting a formal diagnosis. *Id.*

**II.    Appellees Placed Vulnerable Students in a Special Education Classroom with an Unqualified Teacher and Failed to Provide Monitoring or Support.**

Appellees placed Students in a segregated special education classroom at Elm Street. *Id.* at 4-5. Hildebrand hired and assigned Catherine Sprague to the Students' classroom immediately before the start of 2019-20 school year, even though Sprague did not have a certification in special education from Georgia and had little experience or training in dealing with the behavioral issues of children with disabilities. *Id.* She had never been the lead teacher of, or otherwise responsible for, children with moderate to significant disabilities, limited communications skills, or behavioral issues. *Id.* at 5.

Appellees were responsible for the safety and welfare of Students while at Elm Street, including any necessary observation, monitoring, and reporting of the Students' classroom instruction, behavior, safety, progress, and/or regression. *Id.* at 5-7. Despite their knowledge of Students' significant disabilities and their teacher's lack of qualifications, Appellees failed to perform their duties to ensure the safety and competent instruction of Students. *Id.* Appellees did not provide Sprague with necessary training or support or observe her classroom. *Id.*

**III.    Students Were Abused Physically and Emotionally at School.**

In September 2019, Students' parents noticed signs that their children had become frightened and upset by the school environment. *Id.* at 8-9, 11-14. A.W.

4

resisted going to school and had become aggressive. *Id.* at 8-9. M.F. similarly avoided school, complaining of headaches and other pain. *Id.* at 11-12. Students regressed in toileting and often returned home soaked with urine or soiled with feces. *Id.* at 9, 11-13. Because these children have developmental disabilities, they could not communicate to their parents what was happening. *Id.* at 7-11. But they were being physically and emotionally abused. *Id.* at 8-9, 11-18.

D.G. was spanked and frequently locked in the bathroom when Sprague got angry with her. *Id.* at 13-14. On at least one occasion, D.G. was placed in a prone restraint, an action well-known to be physically and emotionally harmful. *Id.* at 15. On another occasion, Sprague threw D.G.'s shoe at M.F., hitting M.F. in the face. *Id.* at 17.

Elm Street's atmosphere was violent and frightening to Students, who were not only the objects of abuse but also regularly witnessed Sprague attacking their classmates. Once, Sprague slapped a student, hit her with a pencil, restrained her, and responded to the student's crying by calling her "ridiculous" and "a bully." *Id.* at 15-16. On another occasion, she grabbed the student by the neck and shook her head back and forth aggressively, causing the student to attempt to flee and sob. *Id.* at 16. Sprague humiliated the student and encourage other students to do so too, calling her "a disgusting animal and a baby who will never have friends." *Id.* at 17.

5

She pinched this student aggressively. *Id.* at 18. She threatened to "punch" another student with an autism spectrum disorder. *Id.*

Sprague also did nothing to prevent the students from hurting one another. M.F. returned home one day in December 2019 with marks on her neck, reporting she had been "choked" by one of her classmates. *Id.* at 12. Neither Sprague nor Appellees informed M.F.'s parents. *Id.* Sprague even encouraged students to "hit back" when hurt by another student. *Id.* at 16.

## IV. Appellees Received Multiple Notifications of Egregious Abuse and Did Nothing to Protect the Students

Despite their knowledge of Sprague's lack of special education credentials or training and of Students' significant developmental disabilities—including behavioral and communication issues—Appellees provided Sprague and her paraprofessional, Nicole Marshall, little to no support. *Id.* at 5-7. Nor did Appellees monitor the classroom. *Id.* at 6-7.

During the fall of 2019, Appellees learned of developments that should have prompted investigation and monitoring of Students' classroom. A.W.'s mother notified the school about his newly aggressive behavior, regression in toileting, and resulting medication changes. *Id.* at 9. D.G.'s mother complained to Hildebrand about the problems D.G. was having in the classroom. *Id.* at 14. Throughout the semester, paraprofessional Marshall witnessed Sprague abusing her students and finally reported the abuse to Hildebrand in December 2019. *Id.* at 15-19. Marshall

reported the abuse to Hildebrand on five separate occasions—on December 6, 10, 11, 12, and 16, 2019. *Id.* at 19.

Despite her legal duty as a mandated reporter, Hildebrand took no action until December 18, 2019. *Id.* at 22. Even then, Appellees did nothing except notify Students' parents—who were told only that Hildebrand had "concerns" about Sprague—and law enforcement. *Id.* Appellees permitted Sprague to continue as Students' classroom teacher for some time after that report was made. *Id.* at 23. Appellees did not report Sprague to the state's Professional Standards Commission. *Id.* In January 2020, then-Superintendent of CCSS, Steve Barker, acknowledged Hildebrand's failure to promptly report abuse allegations, but Hildebrand received only a two-day suspension without pay. *Id.* She remains principal at Elm Street. *Id.* at 4-5.

## V. Students Suffered Physical and Emotional Trauma and Regression Because of Hildebrand's Indifference

Appellees' deliberate indifference to the assault, battery, isolation, and emotional abuse in Sprague's classroom caused Students significant developmental regression, increased aggression, physical pain and suffering, regression in toileting, and emotional distress. *Id.* at 8-18, 26-27, 31. It also caused some Students to fear and avoid school. *Id.* at 8, 11-12.

## Course of Proceedings Below

Appellants filed a complaint in the Newnan Division of the Northern District of Georgia on December 17, 2021. Doc. 1. The complaint sought "damages for mental pain and suffering" and special damages under Title II, Section 504, and Section 1983, as well as punitive damages under Section 1983.  Doc. 1 – Pg. 14. The complaint also alleged a violation of Section 504 of the Rehabilitation Act and a state tort claim not at issue in this appeal.

On April 28, 2022, the United States Supreme Court held that emotional distress damages are not recoverable under Section 504. *Cummings v. Premier Rehab Keller, P.L.L.C*, 142 S. Ct. 1562 (2022) . On May 17, 2022, Appellees moved to dismiss all of Students' claims under Fed. R. Civ. Proc. 12(b)(6). Doc. 12.  On July 1, 2022, Appellants moved for leave to amend their complaint for the first time. Doc. 18.  Students attached a proposed amended complaint withdrawing their Section 504 claim and bolstering and clarifying their remaining claims under Title II and Section 1983.  Doc. 18-1.  Students filed a timely response opposing Appellees' motion to dismiss.  Doc. 19.  Appellees opposed Students' motion to amend, prompting Students to file a timely reply.  Docs. 24 and 25.

On November 16, 2022, before any discovery took place, the district court dismissed Students' claims with prejudice, declining jurisdiction over the state law tort claim. The court also denied Students leave to amend their complaint,

concluding that amendment would be futile. Doc. 31. Students timely appealed on December 15, 2022. Doc. 33.

## **Standard of Review**

The district court dismissed Students' complaint for failure to state a claim under Fed. R. Civ. Proc. 12(b)(6). The standard of review for this decision is *de novo*. *Hill v. White*, 321 F.3d 1334, 1335 (2003). The Court should accept all allegations of the complaint as true and construe those facts in the light most favorable to the Students. *Id.*

The district court also denied Students' motion for leave to file an amended complaint solely on the grounds the proposed amendment would be "futile." Generally, a district court's decision to deny a motion to amend a complaint is reviewed for abuse of discretion. *City of Miami v. Citigroup, Inc.*, 801 F.3d 1268, 1275 (2015). But this Court has stated it "review[s] *de novo* an order denying leave to amend on the grounds of futility, because it is a conclusion of law that an amended complaint would necessarily fail." *Id.*

## SUMMARY OF THE ARGUMENT

In dismissing Students' Title II claims, the district court erred for two reasons. First, it extended *Cummings v. Premier Rehab Keller, P.L.L.C.* 142 S. Ct. 1562 (2022) to conclude that emotional distress damages are not available under Title II of the ADA. But the Supreme Court expressly limited the reach of *Cummings* to "Spending Clause" legislation like Section 504, explaining that the "contract analogy" is "'only a potential limitation on liability' compared to that 'which would exist under nonspending statutes.'" *Cummings*, 142 S. Ct. at 1573. Because Title II is a "nonspending statute[]," the "contract analogy" does not apply.

Second, even if *Cummings*' preclusion of emotional-distress damages could be read to apply to nonspending legislation, the district court still erred because it dismissed the entire complaint, even though the complaint sought various forms of relief other than emotional-distress damages. The proper course of action would have been to dismiss the Title II claims only to the extent that they sought emotional-distress damages. A complaint may be dismissed only if it fails to state a claim, not if it fails to plead the proper remedy. *Kent v. Walter E. Heller & Co.*, 349 F.2d 480, 481 (5th Cir. 1965) (a litigant "misconceiv[ing] his cause of action, if any, or his remedy, [does] not … warrant[] the dismissal of his complaint unless it appear[s] to a certainty that he was 'entitled to no relief under any state of facts which could (have been proved) in support of the claim").

The district court also erred in dismissing Students' Section 1983 claims without allowing them to amend their complaint even once. The district court correctly acknowledged that "[t]he test to determine the futility of an amended complaint is the same as that applied under Rule 12(b)(6) of the Federal Rules of Civil Procedure governing dismissal for failure to state a claim." Doc. 31 – Pg. 8 (quoting *Christman v. Walsh*, 416 F. App'x 841, 844 (11th Cir. 2011)). However, the district court failed to consider whether Students stated a plausible claim for relief—taking their factual allegations as true—and instead weighed the likelihood that Students would prevail on their claim. This analysis was improper on a motion to dismiss.

Students' proposed amended complaint asserts that they were abused at school in violation of their Fourteenth Amendment substantive due process rights, which are clearly established by the Eleventh Circuit. Students further assert Hildebrand, the principal at their elementary school and a person with authority to remedy the abuse, was aware of a pattern of abuse and failed to act. This constitutes a plausible claim for relief under Section 1983.

## ARGUMENT & CITATION OF AUTHORITIES

### I.    The "Contract Analogy" in *Cummings* Applies Only to Spending Clause Legislation and Does Not Apply to "Nonspending Statutes" Like Title II.

In enacting the ADA, Congress "invoke[d] the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities." 42 U.S.C. § 12101.  Title II of the ADA prohibits disability discrimination by public entities.  42 U.S.C. § 12132.  It permits private causes of action for injunctive relief, damages, and attorney's fees and costs.  *Fry v. Napoleon Cnty. Schs.*, 580 U.S. 154, 160 (2017); *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019).  Here, Students have alleged Title II violations and seek compensation for their emotional distress, physical pain and suffering, and other compensatory damages to be proved at trial, such as and past and future medical, therapeutic and rehabilitative costs.

To establish a claim under Title II, Students must show "(1) that [they are] a qualified individual with a disability; (2) that [they were] either excluded from participation in or denied the benefits of a public entity's services, programs, activities, or were otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of [their] disability." *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007).  Any plaintiff

seeking compensatory damages under Title II must also show that the discrimination was intentional or deliberately indifferent to their statutory rights. *Silberman,* 927 F.3d at 1134. Students' allegations satisfy these elements and therefore state valid Title II claims.[2]

In dismissing Students' claims, the district court relied on *Cummings v. Premier Rehab Keller, PLLC*, which precluded emotional distress damages in private suits under Section 504 and the ACA. This was legal error as *Cummings* did not consider the availability of emotional distress damages under Title II, and the "contract analogy" reasoning of *Cummings* does not apply to Title II, which imposes liability on all municipalities and is not premised on the receipt of federal funds. And, in any case, a defect in requested relief is not grounds for dismissal – so long as any relief remains available to Students under Title II, their case should be allowed to proceed. *See Laird v. Integrated Resources, Inc.,* 897 F.2d 826, 841 (5th Cir. 1990) (citing four binding decisions from the former Fifth Circuit).[3]

---

[2] Appellees presented little argument below regarding Students' Title II claims except to contend they sought unavailable damages. Other than finding the Students lacked a remedy, the district court did not address whether the allegations in the original or proposed amended complaint presented a plausible Title II claim.

[3] Fifth Circuit cases decided before September 30, 1981 are binding on this Court. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

## A. Emotional Damages Are Recoverable for Intentional Violations of Title II.

1. The Court's Holding in *Cummings* Does Not Apply to Title II, Which Was Enacted under Congress' Fourteenth Amendment Power and Commerce Power.

The Supreme Court's holding in *Cummings* is limited to Section 504 and the ACA and has no bearing on the available remedies under Title II. *Cummings*, 142 S. Ct. at 1576 ("emotional distress damages are not recoverable *under the Spending Clause antidiscrimination statutes we consider here*.") (emphasis added).   The Court's analysis hinged on Section 504's identity as a "Spending Clause" statute that conditions the provision of federal funds on compliance with statutory terms. *Id*. at 1570.  Analogizing this arrangement to a contract between the federal government and the funds recipient, the Court explained Congress' authority to legislate under the Spending Clause "rests not on its sovereign authority to enact binding laws, but on 'whether the [funds recipient] voluntarily and knowingly accepts the terms of th[at] contract.'"  *Id*. (citing *Barnes v. Gorman*, 536 U.S. 181, 186 (2002) (further citations omitted)).  Voluntary and knowing acceptance requires "clear notice" of potential liability.  *Cummings*, 142 S. Ct. at 1570.  Thus, where Spending Clause enactments are silent as to available relief, this "clear notice" requirement constrains available remedies to those generally available in contract – remedies for which a funds recipient is presumed to have "clear notice."  *Id*. at 1565, 1571.  The Court

found that because emotional distress damages are not generally compensable in contract actions, they are not available under Section 504 or the ACA. *Id*. at 1576.

But this "notice" requirement does not apply to nonspending statutes. The *Cummings* Court drew clear distinctions between Spending Clause legislation, "which operates based on consent," and "ordinary legislation," which "'imposes Congressional policy' on regulated parties 'involuntarily.'" *Id*. at 1570. And it carefully characterized its constraint on available remedies under Section 504 and the ACA as only a "potential limitation on liability *compared to that which would exist under non-spending statutes*." *Id*. at 1573 (emphasis added). Title II is a non-spending statute, rooted in Congress' Commerce Clause and its power to enforce the promises of the Fourteenth Amendment. 42 U.S.C. § 12101 (b)(4) (invoking "the sweep of congressional authority, including the power to enforce the fourteenth amendment... to address the major areas of discrimination faced day-to-day by people with disabilities."); *see also Tennessee v. Lane*, 541 U.S. 509 (2004) ("Title II constitutes a valid exercise of Congress' authority under § 5 of the Fourteenth Amendment to enforce that Amendment's substantive guarantees"); *United States v. Georgia*, 546 U.S. 151, 158-59 (2006) (Scalia, J.) ("No one doubts that § 5 grants Congress the power to "enforce… the provisions" of the Amendment by creating private remedies against the States for *actual* violations of those provisions"). Unlike Section 504 and the ACA, Title II does not operate on consent or condition

15

funding on compliance with its terms – ordinary legislation imposes an outright prohibition on discrimination by public entities involuntarily.  *See* 42 U.S.C. § 12101(b)(1) (articulating the ADA's purpose as "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities"); *see also Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1174 (2003) (noting that an "integral purpose" of Title II was to expand the prohibition against disability discrimination to public entities "regardless of whether or not such entities receive Federal financial assistance") (quoting H.R.Rep. No. 101–485, pt. 2, at 84 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 366–6)).

2. <u>Under Title II, a Nonspending Enactment, Any Appropriate Compensatory Relief, Including Emotional Distress Damages, Is Presumptively Available.</u>

Because Title II, via its cross-references, is ultimately silent as to the scope of available remedies,[4] and the decision in *Cummings* does not settle the question, the court must apply the general rule: that any appropriate relief is available to "make good the wrong done" for violations of a federal right.  *See Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 669 (1992) (quoting *Bell v. Hood*, 327 U.S.

---

[4] Title II's enforcement section incorporates the "remedies, procedures, and rights" set forth in Section 504, and by extension, Title VI of the Civil Rights Act of 1964, which is silent as to the scope of available relief under that statute. 42 U.S.C. § 12133; 42 U.S.C. § 794a; 42 U.S.C. § 2000d *et*. *seq*.

678, 684 (1946)). This presumption only yields to "clear direction" from Congress. *Id.* at 70-71.

While the Supreme Court has clarified that the presumption for any appropriate relief does not apply to *punitive* damages and may be constrained when applied to Spending Clause enactments, *Barnes* does not apply here. In *Barnes*, the Court was careful to note that its rejection of punitive damages under Section 504 and Title II followed the "well-settled" rule in favor of any available remedy, explaining that punitive damages are "not embraced within the rule" because they are not designed to "make good the wrong done." *Id.* ("Punitive damages are not compensatory, and are therefore not embraced within the rule described in *Bell.*") (citing *Bell*, 327 U.S. at 684). Although *Cummings* sets out a *potential* constraint on the operation of this rule as applied to compensatory relief under Spending Clause enactments–conditioning the "appropriateness" of available relief on notice of potential liability–that constraint does not apply to non-spending enactments like Title II. *Cummings*, 142 S. Ct. at 1573.

Emotional distress damages fall squarely within the scope of "any appropriate relief" under Title II. Unlike punitive damages, they are a form of compensatory relief designed to "make good the wrong done" where federal rights have been invaded. *See Memphis v. Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (internal citations omitted) (humiliation, mental anguish and suffering are

compensable injuries under Section 1983); *Carey v. Piphus*, 435 U.S. 247, 264 (1978) (mental and emotional distress caused by the denial of procedural due process itself is compensable under Section 1983); *Banai v. Sec'y, U.S. Dep't of Hous & Urban Dev. ex rel. Times*, 102 F.3d 1203, 1207, n. 4 (11th Cir. 1997) (anger, embarrassment, and emotional distress are compensable injuries under the Fair Housing Act, which allows for recovery of "damages which constitute 'compensation for the victim's injuries, not punishment for the perpetrator's wrongdoing.'"). And because the *Cummings* limitation on appropriate compensatory relief does not apply to Title II, under which notice of potential liability is not required, damages for emotional distress are presumptively available.

Nothing in the text, regulations, and legislative history of Title II constitutes a clear congressional directive to preclude damages for emotional distress under Title II sufficient to overcome this presumption in favor of any compensatory relief-including its incorporation of Section 504's remedial scheme. While Title II references the rights, remedies, and procedures set out in Section 504, Title II's legislative history confirms Congress understood Section 504's remedial scheme to afford a full range of compensatory damages, including emotional distress damages, to persons aggrieved under the statute. *See* H.R. Rep. No. 101-485 (III), at 52 (1990) ("As with section 504, there is also a private right of action for persons with disabilities [under Title II], which includes the *full panoply of remedies*.") (emphasis

added). Indeed, Congress rejected a proposal to limit remedies under Title II to those available under Title VII of the Civil Rights Act, which did not allow for compensatory damages at the time of the proposed amendment. *See* H. Amdt. 454 to Americans with Disabilities Act, H.R. 2273, 101st Congress (1990); *Patterson v. McClean Credit Union*, 491 U.S. 164 (1989). And Title II's implementing regulations acknowledge "the full range of remedies (including compensatory damages)" are available under Title II. 28 C.F.R. Pt. 35, App. A; *see also* 28 C.F.R. § 35.172(c)(2) (providing for compensatory damages where appropriate).

Congress had no reason to believe the "full range" of compensatory remedies it incorporated into Title II would not include damages for emotional distress. While the Supreme Court had previously applied a contract law analogy to Spending Clause enactments to require Congress to clearly articulate the obligations of federal funds recipients, *see Pennhurst State Sch. and Hosp. v. Halderman*, 451 U.S. 1 (1981), Congress could not have known in 1990 that this analogy would extend to constrain the scope of available remedies under Section 504 twelve years later. *Barnes v. Gorman*, 536 U.S. 181, 187 (2002). In fact, the Supreme Court had actually *affirmed* the availability of emotional distress damages as compensable under other statutes passed under Congress' Fourteenth Amendment enforcement power – the same authority under which Congress enacted Title II. *See Carey*, 435 U.S. at 264 (finding that mental and emotional distress are compensable damages

19

under Section 1983); *Stachura*, 477 U.S. at 307 (same). Absent a clear congressional directive to limit remedies under Title II or any indication that Congress believed Section 504's remedial scheme to include something less than a "full panoply" of compensatory remedies, it should be "presumed that "Congress enacted [Title II] with the prevailing traditional rule [in favor of any appropriate relief] in mind." *Franklin*, 503 U.S. at 73.

The judicial constraint on compensable remedies under Section 504 set out in *Cummings* over three decades after Title II's passage – no matter how legitimate – cannot overcome this presumption as applied to Title II. *See Cannon v. Univ. of Chicago*, 441 U.S. 677, 711 (1979) (quoting *Brown v. GSA*, 425 U.S. 820, 828 (1976) ("[T]he relevant inquiry is not whether Congress correctly perceived the then state of the law, but rather what its perception of the state of the law was."). To be sure, the remedies in Title II are "coextensive" with those in Section 504. *Barnes*, 536 U.S. at 189. But Section 504 does not expressly bar emotional distress damages. Rather, the text is "silent" in that regard. *Cummings*, 142 S. Ct. at 1571. And while silence is construed in favor of the funding recipient under Spending Clause statutes, silence is construed the other way under "nonspending statutes" like Title II. *See id.* Put another way, while Section 504 is "construe[d] … with an eye toward "ensuring that the receiving entity of federal funds [had] notice that it will be liable," the ADA is widely applicable "remedial legislation," which "should be construed broadly to

effectuate its purposes." *See Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967). There is thus no concern that "an award of damages in a particular case might well exceed a recipient's level of federal funding," because liability does not depend on federal funding. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).

Although the Supreme Court in *Barnes v. Gorman* analyzed Section 504 and Title II together and limited available damages under both statutes based on their coextensive remedies, 536 U.S. at 189, the limitation on damages under Section 504 set out in *Cummings* should not be similarly applied to Title II. In *Barnes*, rather than employing a "potential limitation" on compensatory remedies under Section 504, the Court found *punitive damages* to be categorically outside the scope of the presumption in favor of all appropriate relief. *Barnes*, 536 U.S. at 189. And while the *Barnes* Court referenced Title II's incorporation of Section 504's remedies, its rejection of punitive damages under Title II is supported by the longstanding rule establishing immunity of governmental entities from punitive damages in common law, to avoid punishing taxpayers for the wrongdoing of municipalities. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 263 (1981) ("In general, courts viewed punitive damages as contrary to sound public policy, because such awards would burden the very taxpayers and citizens whose benefit the wrongdoer was being chastised."). This rationale for prohibiting punitive damages against public entities under Title II does not apply to emotional distress damages, which operate to

compensate plaintiffs for the damage caused by the government's violation of their rights, rather than as a punishment levied against the government. *See Id.* (distinguishing between liability to compensate for injuries inflicted by a municipality and vindictive damages appropriate as punishment and recognizing that compensation is an obligation properly shared by a municipality). Indeed, although Section 504 borrows its remedies from Title VI, the Supreme Court has cautioned *against* applying categorical limitations under Title VI to Section 504. *See Alexander v. Choate*, 469 U.S. 287, 294 (1985) (finding that "there are reasons to pause" before extending a judicial interpretation limiting liability under Title VI to Section 504, despite the statutes' coextensive rights and remedies); *see also Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 632-36 (1984) (finding that even though Section 504 expressly incorporated Title VI's cause of action, a limitation on the cause of action set out in Title VI did not carry over to Section 504). Likewise, to import a constraint into Title II's remedial scheme based on Congressional authority under the Spending Clause would be inappropriate. Without independent cause to similarly constrain remedies under Title II, which does not "operate based on consent" and under which notice of liability is irrelevant, courts must presume all available compensatory remedies.

Finally, another reason to reject extending *Cummings* to Title II is that there are already significant limitations on the compensatory relief available under Title

II.  First, as noted, no damages of *any* sort are available against a State, unless Congress has abrogated its sovereign immunity.  *See Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001).  Second, every circuit in the country has held that compensatory damages (whether emotional, or otherwise) are available under Title II only when the public entity committed "intentional discrimination," generally defined as "deliberate indifference."  *See, e.g.*, *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014).  This is "an exacting standard," as it "requires showing more than gross negligence.  *Id.* ("To establish deliberate indifference, a plaintiff must show that the defendant *knew* that harm to a federally protected right was substantially likely and *failed* to act on that likelihood.") (internal quotation marks omitted).  Given these significant limitations, it is already rare for a public entity to be subjected to emotional-distress damages. But the shocking conduct in this case and the emotional harm it caused present such a rare case and illustrate why preserving emotional-distress damages is so important.

3. <u>Emotional Distress Damages Are Available Under Title II for Intentional Discrimination That Implicates Constitutional Rights</u>

Even if *Cummings* can be applied to constrain remedies under Title II, that constraint does not apply here, as Students allege Title II violations that also implicate constitutional rights.  The Supreme Court has recognized that Congress' enforcement powers are at their height when legislating to address disability discrimination implicating constitutional rights, as opposed to that which is only a

statutory violation.  *Compare Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356 (2001) (Congress did not validly abrogate states' Eleventh Amendment immunity to suits in federal court for money damages under Title I of the ADA) with *Lane*, 541 U.S. 509, 533–34 (2004) (Congress validly abrogated states' Eleventh Amendment immunity to suits in federal court for money damages under Title II "as it applies to the class of cases implicating the fundamental right of access to the courts") and *United States v. Georgia*, 546 U.S. at 157-59 (Congress validly abrogated states' Eleventh Amendment immunity to suits in federal court for money damages under Title II which target behavior that also violates the Fourteenth Amendment).  Although dealing with a separate issue—that of Congress' power to abrogate states' Eleventh Amendment immunity under Title II—the Court in *United States v. Georgia* recognized Congress' "prophylactic" power to enforce Title II violations that also constitute violations of the Fourteenth Amendment—including by permitting monetary damages against state actors.

> While the Members of this Court have disagreed regarding the scope of Congress's "prophylactic" enforcement powers under § 5 of the Fourteenth Amendment, no one doubts that § 5 grants Congress the power to "enforce ... the provisions" of the Amendment by creating private remedies against the States  for *actual* violations of those provisions. "Section 5 authorizes Congress to create a cause of action through which the citizen may vindicate his Fourteenth Amendment rights."  This enforcement power includes the power to abrogate state sovereign immunity by authorizing private suits for damages against the States.

*United States. v. Georgia*, 546 U.S. at 158–59 (emphasis in original).

Much like the discrimination alleged in *Georgia* and *Tennessee*, Students' case involves violations of fundamental Constitutional rights by a public entity. In this way, Students' case factually differs from *Cummings*, which involved the refusal of a private physical therapy provider to furnish the plaintiff with an American Sign Language interpreter. *Cummings*, 142 S. Ct. at 1565. Students were subjected to discrimination under Title II based upon the repeated emotional and physical abuse they experienced at the hands of their teacher in their public school classroom. They were spanked, restrained, locked in the bathroom, slapped, threatened with punching, hit with objects, and choked without behavioral justification.. Appellees placed an inexperienced, untrained teacher in a classroom of vulnerable students, with significant disabilities and behavioral issues, with difficulty communicating, seeking protection, and asking for help. Appellees then ignored their responsibilities to ensure Students' safety, failed to monitor the classroom despite warning signs, and took no action in response to five notifications from a paraprofessional that the children were being physically and emotionally abused. This discrimination under Title II also constitutes violations of the Fourteenth Amendment, which prohibits the deliberate infliction of physical pain and restraints of public school students as well as excessive corporal punishment with no rational basis. *See Inghram v. Wright*, 430 U.S. 651, 674 (1977); *Neal ex rel. Neal v. Fulton Cnty. Bd. of Educ.*, 229 F. 3d 1069 (11th Cir. 2000); *Williams v. Fulton Cnty. Sch. Dist.*, 181 F. Supp. 3d 1089,

1129 (N.D. Ga. 2016) (citing *City of Cleburne, Tex. V. Cleburne Living Ctr.*, 473 U.S. 432 439 (1985)).

Expanding *Cummings*' holding here would leave Students without a federal remedy for the primary form of damage caused by those violations - emotional distress. In cases such as this, involving Fourteenth Amendment violations, Congressional power to create an enforceable right is at its strongest. The Court may not infer a limitation on damages—based on a rationale that does not apply to Title II—which leaves those violated with little to no remedy and which substantially frustrates enforcement. Emotional distress damages must be available for violations of Title II that implicate Constitutional rights.

## B. Students Alleged Facts Entitling Them to Other Types of Compensatory Damages and Requested Those Damages in Their Proposed Amended Complaint

Regardless of the availability of emotional distress damages, Students' amended Title II claim was not futile because it "state[d] a claim on which relief may be granted." Fed. R. Civ. P. 12(b)(6). Below, Appellees did not dispute Students' proposed amended complaint pled enough "factual content" to "draw the reasonable inference" that CCSS violated Title II. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009); *see* Doc. 24 – Pgs. 7-9. And they could not dispute that the proposed amended complaint requests damages for 'physical harm and other compensatory damages and relief,' as well as such 'further relief as the Court deems just and

proper.' Doc. 18-1 – Pgs. 31-32.  At minimum, this includes compensation for lost educational benefits, remediation, and nominal damages -- damages that remain available under *Cummings*.  *See Alexander v. Thomas Univ., Inc*., No. 7:21-cv-86, 2023 WL 2307612 (M.D. Ga. 2023) (Lawson, J.) (noting compensatory damages still available under Section 504 notwithstanding *Cummings*); *Doe v. Fairfax Cnty. Sch. Bd*., No. 1:18-cv-00614, 2023 WL 424265 (E.D. Va. Jan. 25, 2023) (evaluating the availability of non-emotional distress damages).  Instead, they argued only the claim is futile because Plaintiffs' request for emotional distress damages "seeks relief that the statute does not provide."  *Id*.  The district court denied the motion to amend for this reason.  Doc. 31 – Pg. 8.  This was error.

Even if the proposed amended compliant had not expressly sought non-emotional compensatory remedies, this dismissal was still erroneous because, "[r]equesting an improper remedy is not fatal" to a claim.  *Laird*, 897 F.2d at 841 (citing four binding Fifth Circuit decisions).  A litigant "misconceiv[ing] his cause of action, if any, or his remedy, [does] not … warrant[] the dismissal of his complaint unless it appear[s] to a certainty that he was 'entitled to no relief under any state of facts which could (have been proved) in support of the claim."  *Kent*, 349 F.2d at 481.  So "even if the district court was right that [Plaintiffs are] seeking relief to which [they are] not entitled, this would not justify dismissal of the suit." *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002); *see also Dingxi Longhai Dairy, Ltd. v.*

27

*Becwood Tech. Grp. L.L.C.*, 635 F.3d 1106, 1108 (8th Cir. 2011) ("[T]he selection of an improper remedy in the Rule 8(a)(3) demand for relief will not be fatal to a party's pleading if the statement of the claim indicates the pleader may be entitled to relief of some other type.") (quoting Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1255 at 508-09 (3d ed. 2004)).[5]

This Court applied this rule to correct the same error in *Levine v. World Fin. Network Nat'l Bank*. 437 F.3d 1118, 1124 (11th Cir. 2006). There, as here, the district court dismissed the complaint because it believed the plaintiff impermissibly relied on "emotional distress" to support damages. *Id.* at 1123. This court reversed, reasoning that the complaint "stated a *prima facie* claim" under the statute and requested "all other relief that the Court deems just and appropriate"—a demand that implicitly encompassed other (statutory) damages. *Id.* at 1124-25. This was enough to state a claim for relief, even if the statute "bar[red] recovery for … emotional distress." *Id.*

---

[5] The Federal Rules of Civil Procedure provide a more specific statement of the relief sought arises later in the case when the Initial Disclosures filed pursuant to Fed. R. Civ. P. 26(a)(1)(A)(ii) and, as with all discovery, is supplemented in a "timely manner if the party learns that in some material respect the disclosure or response is incomplete." *Id.*; Fed. R. Civ. P. 26(a)(1)(C) or "thirty (30) days after the appearance of a defendant by answer or motion" when additional specificity on the damages sought is required. L.R. 26.1(A) (L.R. N.D. Ga.). Here, the parties entered a consent order to delay submission of the initial disclosures until after the resolution of the motion to dismiss.

As in *Levine*, Students' proposed amended complaint plainly states a claim on which relief may be granted. Indeed, Appellees did not dispute below that the Students' proposed amended complaint sufficiently alleged a *prima facie* case that the District violated Title II. *See* Doc. 24 – Pgs. 7-9. They also alleged facts entitling them to damages for lost educational benefits (regression), as well as past and future medical and rehabilitation costs. Doc. 18-1 – Pgs. 8-18, 26-27, 31-32. Moreover, a violation of Title II entitles Plaintiffs to at least nominal damages. *See*, *e.g.*, *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 874 (9th Cir. 2017). Even if *Cummings* applies, nominal damages are still available because they are "traditionally available in suits for breach of contract," *Cummings*, 142 S. Ct. at 1572, as the Supreme Court and every major contract treatise has recognized. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 800 (2021) ("[T]he prevailing rule, 'well established' at common law, was 'that a party whose rights are invaded can always recover nominal damages without furnishing any evidence of actual damage.'") (citing common-law breach of contract cases among others); 3 Farnsworth on Contracts § 1208 (4th ed. 2020) (nominal damages are available for breach of contract); *accord* 24 Williston on Contracts § 64:9 (4th ed. 2019); J. Perillo, Contracts § 14.2 (7th ed. 2014); Restatement (Second) of Contracts § 346 & cmt. b.[6] The Court may award nominal

---

[6] As an aside, the district court also erred in suggesting *Cummings* restricted the scope of available damages under spending clause enactments to those found under

damages even if Students' did not identify them specifically in their request for relief. *See* Fed R. Civ. P. 54(c) ("Every [non-default] final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."); *Levine*, 437 F.3d at 1124-25 (request for "'any and all other relief' deemed appropriate" encompassed all damages available under statute); *Sapp v. Renfroe*, 511 F.2d 172, 176 n.3 (5th Cir. 1975) (plaintiff who requested only equitable relief and "further relief as is just and proper" could still seek damages because "the demand for relief in the pleadings does not limit, except in cases of default, the relief a court may grant when entering judgment").

## II.    The District Court Erred by Dismissing Students' 1983 Claims Under an Incorrect Legal Standard.

Students assert Section 1983 claims against Hildebrand in her personal capacity and against the District under *Monell v. Dep't of Social Servs.,* 436 U.S. 658 (1978). To state a claim under Section 1983, Students must show acts or omissions that deprived them of a right, privilege, or immunity secured under the U.S. Constitution and that this act or omission was committed by a state actor under color of law. *Hale v. Tallapoosa Cnty*, 50 F.3d 1579, 1582 (11th Cir. 1995).   The "touchstone of [a Section] 1983 action against a government body is an allegation

---

Georgia contract law. *Cummings* limited plaintiffs under the ACA and Section 504 to contract damages generally available under hornbook contract law.

that official policy is responsible for a deprivation of civil rights protected by the Constitution." *Monell,* 436 U.S. at 690 (1978).

To survive dismissal, these claims need only be "plausible on [their] face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Allegations are facially plausible where they "permit 'the reasonable inference that [the public entity] is liable for the misconduct alleged.'" *See Hoefling v. City of Miami*, 811 F.3d. 1271, 1281 (11th Cir. 2016) (quoting *Twombly*, 556 U.S. at 678). At the motion to dismiss stage, a compliant should be allowed to proceed even where "recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

Students, in their original and proposed amended complaints, alleged facts presenting plausible Section 1983 claims against Hildebrand and the District. However, instead of evaluating whether Students pled plausible claims, the district court improperly looked beyond the pleadings and weighed the claims' merits. Put another way, the district court confused what Students would have to show at trial or to survive summary judgment with the lesser burden of showing "plausibility" at this early stage. *See Hoefling*, 811 F.3d. at 1281. This is legal error requiring reversal.

### A. Students Have Properly Pled a Violation of Their Substantive Due Process Rights Under the Fourteenth Amendment

Whether a government actor in a non-custodial setting violated a person's substantive due process rights under the Fourteenth Amendment depends on whether

the act or omission can be characterized as arbitrary, egregious, or conscience-shocking. *Waddell v. Hendry Cnty. Sheriff's Off.,* 329 F.3d. 1300, 1305 (11th Cir. 2003). An act or omission is arbitrary, egregious, or conscience-shocking in this context when a state actor is "deliberately indifferent." *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1330 (11th Cir. 2020).

This Court has suggested that even in non-custodial settings like schools, "deliberate indifference might be sufficient" to constitute a substantive due process violation where "'at the very least,' it involve[s] 'deliberate indifference to an extremely great risk of serious injury.'" *L.S.* at 1323 (quoting *Waddell*, 329 F.3d. at 1306). And despite its holding in *Nix v. Franklin Cnty. Sch. Dist.* that "in a classroom setting, courts have not allowed due-process liability for deliberate indifference," this Court also clarified that the *Nix* holding is narrow and "would not necessarily control, say, a similar accident in a 4th-grade classroom…" 311 F.3d. 1373, 1379, n.2 (11th Cir. 2002).

Students allege recurring abuse by a teacher in an elementary school classroom that plausibly constitutes deliberate indifference under the applicable standard. In Students' special education classroom, Sprague threw a shoe at a student's head, encouraged students to hit each other, squeezed a student's neck and shook her head from side to side, placed a student in a dangerous prone restraint, and failed to act when students choked one another. Hildebrand did nothing to stop the

abuse. Given their young age and significant disabilities, these acts of violence and Hildebrand's failure to promptly undertake remedial measures plausibly placed Students in extremely great risk of serious physical injury.

However, instead of considering whether these allegations could *plausibly* support a finding of deliberate indifference, and despite the fact no discovery has yet been conducted in this case, the district court weighed the likelihood that Students would *ultimately* succeed in showing deliberate indifference to find they had not stated a claim as a matter of law. The district court, for example, noted none of the Students required surgical intervention, as compared with the plaintiff in *Doe v. Huntsville City Sch. Bd. of Educ.*, 546 F. Supp 3d 1043 (N.D. Ala. 2021).[7] Doc. 31 – Pg. 12-13 ("Thus, the Court finds it highly unlikely that deliberate indifference would—in any circumstances—form a successful basis for a claim against Hildebrand"). But whether a defendant acted with deliberate indifference to an "extremely great risk of injury" is a question of fact that cannot be properly resolved under Fed. R. Civ. Proc. 12(b)(6). At this early stage of the litigation, the district court should have determined if Students' well-pled factual allegations plausibly

---

[7] This is a questionable distinction in any event. The Eleventh Circuit standard for establishing deliberate indifference is not whether Students suffered serious injury. The question is whether Hildebrand's acts and omissions presented an "extremely great *risk* of serious injury." Contrary to the district court's suggestion, Students did not have to aver they suffered permanent disfiguring injuries to show deliberate indifference.

give rise to an entitlement of relief. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).  The district court committed legal error when it found, as a matter of law and without the benefit of relevant medical evidence, there was no great risk of serious injury to these children with disabilities given their allegations they were routinely subjected to outrageous abuse and highly-excessive corporal punishment in their classroom.

Moreover, the district court failed to consider this Court's observation children "who suffer from severe developmental disabilities are particularly vulnerable to psychological harm, and psychological injuries can be as traumatic, if not more traumatic than physical injuries." *T.W. v. Sch. Bd. of Seminole Cnty. Florida*, 610 F.3d 588, 601 (11th Cir. 2010) (reserving judgment on whether purely psychological injuries can meet the constitutional threshold for a substantive due process violation in a school context).  Courts have declined to dismiss substantive due process claims where children with disabilities have alleged extreme psychological harm from abuse by school staff.  *See B.M. ex rel M.F. v. Thompson*, No. 3:13-CV-J-12JBT, 2013WL 4547344 (M.D. Fla. Aug. 27, 2013) (declining to dismiss a Section 1983 claim where a teacher threw a pencil at a student's head and that action allegedly caused post-traumatic disorder); *D.D.T. v. Rockdale Cnty. Pub. Sch.*, 580 F. Supp. 3d 1314 (N.D. Ga. 2021) (declining to dismiss a Section 1983 claim where no physical injuries were alleged but the plaintiff allegedly lost weight

and required medication for post-traumatic stress as a result of a school teacher's excessive discipline).

Students' developmental disabilities and communication disorders make them particularly vulnerable to extreme psychological harm and trauma. A.W. suffered significant behavioral regression because of Sprague's misconduct, requiring changes to his medication. M.F. became terrified of attending school and experienced significant regression when it came to proper toileting. D.G., who was frequently locked in the school bathroom as a form of punishment by Sprague, also suffered significant toileting regression. The district court erred in summarily dismissing the claims of significant psychological injury caused by Sprague's unchecked acts of physical, verbal, and emotional abuse.

Especially given Students' particular vulnerabilities, the district court should have allowed Students' Section 1983 claims to proceed even it believed that "recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556. Instead, relying upon *Peterson v. Baker*, 504 F.3d 1331 (11th Cir. 2007) and *Dacosta v. Nwachukwa* 304 F.3d. 1045 (11th Cir. 2002), the district court concluded Hildebrand's repeated failures to report Sprague's alleged child abuse to law enforcement and her total indifference to the plight of these children simply was not sufficiently egregious to establish a substantive due process violation as a matter of law. An analysis of these cases, however, show them to be inapposite.

35

In *Peterson*, this Court affirmed a district court's grant of summary judgment to all defendants in a Section 1983 case where a fourteen-year-old student in a remedial class was, on one occasion, choked by his teacher in an altercation where evidence suggested the teacher may have acted in self-defense. *Peterson*, 504 F.3d at 1336, 1340. However, the *Peterson* plaintiff claimed nothing more than *de minimus* injuries from a single incident, whereas Students have reported significant psychological trauma resulting from repeated acts of abuse. *Id.* at 1335. Moreover, *Peterson* involved an appeal from an order granting summary judgment. *Id.* Unlike that plaintiff, Students are only obligated to present a plausible claim for relief at this stage of the litigation.

In *Dacosta*, a college student's substantive due process claims were dismissed after she alleged that her professor slammed a door in her face, causing her arm to become lodged in the shattered glass pane, violently swung the door and shoved the student's face to dislodge her arm. *Dacosta*, 304 F.3d at 1046-47.

However, the *Dacosta* plaintiff's substantive due process claims were not dismissed because the alleged conduct did not reach "conscience-shocking levels." *Id.* at 1048-49. Instead, this Court found that because *Dacosta* had alleged an intentional battery—a tort under *Georgia* law—she had failed to allege a deprivation of rights under the United States Constitution as required to state a claim under Section 1983. *Id.* As United States District Court Judge Amy Totenberg expressly

noted in *D.D.T. v Rockdale Cnty. Pub. Sch.*, "*Dacosta* is accordingly inapposite [in a case involving abuse of a student with a disability in a special education classroom] because it involves allegations of assault and battery against an adult college student who did not suffer disability which rendered her unable to protect herself in any normal fashion and which would be redressable under state tort law." 580 F. Supp. 3d at 1332, n.8.    Students do not rely on Georgia tort law; they have alleged a deprivation of their right to substantive due process under the United States Constitution. And exactly like the plaintiff in *D.D.T.*, they have disabilities that render them unable to adequately protect themselves.

Finally, the district court correctly noted that this Court in *L.S.* casted doubt "whether deliberate indifference can ever be 'arbitrary' or 'conscience shocking' in a non-custodial setting." *L.S.,* 982 F.3d at 1330.  But the district court's reliance on *L.S.* is also misplaced, as *L.S.* does not categorically bar all substantive due process claims for plaintiffs like Students in the public school context.

 In evaluating whether school officials were deliberately indifferent during a school shooting, the *L.S.* Court determined that in emergency situations requiring split-second decision making by school officials, "an official's conduct will shock the conscience only when it stems from 'a purpose to cause harm.'" *Id*. at 1331 ((quoting *Cnty. Of Sacramento v. Lewis*, 523 U.S. 833 (1998).   *Id*.  Because "actual deliberation" by school officials was not practical in *L.S.*, and because the plaintiff

failed to allege purpose to harm by a school official, the plaintiff could not show deliberate indifference. *Id.* at 1331.  But Students' case does not involve split-second decisions and they need not show a purpose to cause harm by school officials.  *See id.* (finding that conduct that is not intentionally harmful can violate substantive due process rights when actual deliberation is practical).  Over the course of more than a week, Hildebrand received multiple reports of child abuse in Students' classroom.  Despite an obligation under Georgia law to report this abuse to authorities within twenty-four hours, she did nothing.  Time and time again she shirked her responsibility to report and investigate these allegations and, in doing so, made a conscious and deliberate choice not to protect the young and vulnerable children under her care.  Actual deliberation was possible, and after deliberating Hildebrand elected to do nothing.

The facts in the proposed amended complaint, which must be assumed at this stage, have established an actionable constitutional violation**.**  The district court erred in finding Students failed to plead a plausible violation of their substantive due process rights and denying Students at least one opportunity to amend their complaint.

### B. Students Have Pled Sufficient Facts to Overcome Hildebrand's Qualified Immunity Defense at this Stage.

Public officials sued in their individual capacities are not entitled to qualified immunity when their discretionary actions violate "clearly established federal,

statutory, or constitutional rights of which a reasonable person would have known." *Keating v. City of Miami*, 598 F.3d. 753, 762 (11th Cir. 2010).

Students have properly pled facts which, if assumed to be true, establish Hildebrand violated their clearly established constitutional rights. The district court's finding there is no clearly established right to substantive due process in non-custodial contexts was wrong. "The right to be free from arbitrary and excessive corporal punishment in a school context is clearly established under Supreme Court and Eleventh Circuit precedent, as is the right to be free from intentional and arbitrary disparate treatment on account of disability." *N.P. ex rel. Perillo*, 2019 WL 4774037, at *11 (internal citations omitted). And "excessive corporal punishment, at least where not administered in conformity with a valid school policy authorizing corporal punishment . . . may be actionable under the Due Process Clause when it is tantamount to arbitrary, egregious, and conscience-shocking behavior." *Neal*, 229 F.3d at 1075. Indeed, "it has been clearly established for decades that… excessively severe corporal punishment, discrimination against disabled students without a rational basis, and deprivation of a student's right to his state-created property interest in his education without due process- are unconstitutional." *Williams*, 181 F. Supp. 3d. at 1129.

It is also well-established in the Eleventh Circuit that supervisory officials are liable under Section 1983 for the unconstitutional acts of their subordinates when

"there is a causal connection between actions of the supervising official[s] and the alleged constitutional deprivation." *Doe v. Broward Cnty.,* 604 F.3d 1248, 1266 (11th Cir. 2010) (*citing Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)). The requisite causal connection is established (1) when a "history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so" or (2) when a supervisor's "improper custom or policy results in deliberate indifference to constitutional rights." *Williams*, 181 F. Supp. 3d at 1129 ("it has also been long-established that a supervisor may bear responsibility for her subordinate's unconstitutional acts if she acts with deliberate indifference in response.")

A reasonable principal or supervisory school official would have known that the alleged physical abuse of nonverbal students with disabilities and the failure of supervisory school officials to address and prevent such abuse would be contrary to clearly established law governing the use of force against students in public schools. *D.D.T.,* 580 F. Supp. 3d at 1333. (N.D. Ga. 2021). Furthermore, a reasonable principal or supervisory school official would have been aware of her statutory obligations to timely report child abuse under O.C.G.A. § 19-7-5.

Assuming the facts set forth above are true, as the Court must do at this stage, Students have pled sufficient facts to overcome Hildebrand's qualified immunity defense by showing, as principal at Elm Street, she was repeatedly alerted to the

classroom teacher's excessive corporal punishment and her unjustified physical, emotional, and verbal abuse of the disabled and non-communicative students in the special needs classroom and took no action to remedy the situation.

Through her deliberate indifference to multiple reports of Sprague's abuse of highly-vulnerable young children, Hildebrand violated Students' substantive due process rights under the Fourteenth Amendment. Any reasonable principal in her position would have understood these Students had a right not to be subjected to unauthorized and excessive corporal punishment and, under Georgia law, would have promptly taken remedial measures to protect the disabled children under her care from further harm. Dismissal "based on qualified immunity is thus inappropriate at this stage- at least not without allowing [these Students] more time to develop their claims." *Williams*, 181 F. Supp. 3d at 1129.

### C. The Court Erred in Finding Hildebrand's Acts and Omissions Could Not Impose *Monell* Liability on the District

In their proposed amended complaint, Students contend the District is directly liable under Section 1983 for violations of their substantive due process rights under the Fourteenth Amendment under two distinct theories. First, the District maintained a custom of inaction and indifference in responding to complaints of student physical abuse and failed to train District employees in the proper handling of such abuse. Second, the District's final policymakers did nothing to stop

Students' classroom instructor from physically, emotionally, and verbally abusing students (and traumatizing the entire class) despite receiving credible reports of this outrageous conduct.

In dismissing Students' 1983 claim, the district court found it "was not persuaded [Students'] allegation Hildebrand is the highest-ranking official allowed and designated by the school system" because Hildebrand's role as school principal gives "her no authority to set policy for the school system as a whole."  Doc. 31 – Pg. 20.  In support of this finding, the district court turned to its own past holding in *Chaney v. Fayette Cnty. Pub. Sch. Dist.*, 977 F. Supp. 2d 1308, 1319 (N.D. Ga. 2013) that Georgia law explicitly confines control and management of a school district to the county board of education under O.C.G.A. § 20-2-50, which cannot delegate its authority to manage the affairs of the school district.  This reasoning–and the flawed conclusion that only a board of education can serve as the final policymaker for a school district–ignores relevant caselaw and sidesteps the required analysis for identifying a final policymaker.

As an initial matter, "identifying and proving that a final policymaker acted on behalf of a municipality is an evidentiary standard, and not a pleading requirement." *Hoefling*, 811 F.3d. at 1280; *see also Williams*, 181 F.Supp.3d at 1125 ("The question of who has final policymaking authority in the context of the facts of this case is thus much more appropriately resolved at summary judgment, not at the

pleading stage. This alone is enough to counsel against dismissal . . .").   Students therefore merely must allege the existence of a final policymaker whose actions may be imputed to the District, which they have done. *Id*.; *see also D.D.T.*, 580 F. Supp. 3d at 1338.[10]

Moreover, the district court considered the wrong question in deciding whether Hildebrand is a final policymaker in this case. That Georgia law confers authority for managing a school district on the local school board is not conclusive as to the question of who is a final policy maker in this case. *See Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1292 (11th Cir. 2004580 F. Supp. 3d at 1338 (To determine if someone is a final policy maker, we look not only to "state and local positive law," but also "custom and usage having the force of law."). Instead, courts must consider who evidences exercises that authority for the school board and the alleged policymaker's authority over the *particular subject area* at issue, or whether the authority arises by custom, usage, ratification, delegation, or by notice

---

[10] In *D.D.T.,* the court found that plaintiff failed to plead sufficient facts to state a claim against the defendant Georgia school district under a final policymaker theory or custom of inaction theory of *Monell* liability.  However, its conclusion was not based on a holding that school staff cannot serve final policymakers for school districts under Georgia law – indeed, it found that principals *can* act as final policymakers in some cases – but because plaintiff failed to allege the principal was not subject to meaningful board review.  The *D.D.T.* court allowed the plaintiff to amend to allege additional facts to support that contention and the district court in this case should have afforded the same relief.  580 F. Supp. 3d at 1338.

and a custom of inaction, as not all aspects of constitutional liability require formal approval of the entity.[11]    *See Monell v. Dep't of Social Servs.,* 436 U.S. 658, 690 (1978) ("The proper inquiry is whether the "decision maker possess final authority to establish municipal policy *with respect to the action ordered*," or whether there is an acquiescence of policymakers either as a result of "a longstanding practice that constitutes the entity's standard operating procedure" or because a subordinate official's decision is later ratified by a supervisor with final policy making authority.") (emphasis added).

Indeed, this Court has found a principal *can* act as final decision-maker for *Monell* liability when his or her decisions are not subject to meaningful school board review.  *Holloman*, 370 at 1292; *see also J.S,* 877 at 988 (quoting *Doe v. Sch. Bd. of Broward Cnty.,* 604 F.3d 1248, 1255 (11th Cir. 2010) (stating in a Title II case a school principal, "as the highest-ranking school official on site at the school, [is] equipped with many… means of deterring or stopping… harassment of students, such as admonishing the teacher, conducting a thorough preliminary investigation,

---

[11] "The proper inquiry is whether the "decision maker possess final authority to establish municipal policy with respect to the action ordered" or is there acquiescence of policymakers either as a result of "a longstanding practice that constitutes the entity's standard operating procedure" or because a subordinate official's decision is later ratified by a supervisor with final policy making authority. *See Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986); *Hoefling*, 811 F.3d at 1279 (quoting *Matthews v. Columbia County*, 294 F.3d 1294, 1297) (11th Cir. 2002)).

swiftly reporting the abuse, and monitoring the teacher's behavior", charged with supervising staff and implementing county regulations.)  And other courts have also found individuals outside a county board of education can act as final policymaker notwithstanding Georgia law cited by the district court in this case.  *See D.D.T.* 580 F. Supp. 3d at 1292; *Williams*, 181 F. Supp. at 1126-1127 (finding that even though the local school board had the authority to hire and fire teachers, the superintendent was a final policymaker in that area as someone with a "predominate role" in the process).  The facts as averred in Students' original and proposed amended complaints thus state a plausible claim Hildebrand was vested with sufficient authority to impute Section 1983 liability to the District.

These students represent some of the most vulnerable members of our society.  At the time of these tragic events, they were elementary school age children.  While all young children are susceptible to abuse, these students were especially at risk given their disabilities.

The District and Hildebrand knew this when they elected to place these children under the care of an underqualified, under-supervised, unprepared, and overwhelmed teacher.  This decision ultimately resulted in Students being subjected to that teacher's outrageous actions, which included taunting and humiliating children, encouraging violence, choking and battering students, yelling and screaming, isolating children in bathrooms, placing children in prone restraints, and

striking children in the head with objects.

Against her own interests, the paraprofessional assigned to Students' classroom reported this abuse to Hildebrand, the individual the District vested with authority to maintain a safe learning environment for Students. Hildebrand had the ability and the duty to immediately report the abuse and take remedial measures to protect Students from continued harm. She had the final authority regarding this matter and her actions were not subject to any meaningful review.

Time and time again the paraprofessional alerted Hildebrand to the teacher's disturbing conduct. Time and time again Hildebrand did nothing despite her clear obligations to act. The result was these children were traumatized and suffered emotional and physical pain and severe behavioral regression.

Students ultimately seek just compensation for these injuries and to reaffirm the Fourteenth Amendment and ADA's promises of equal justice and opportunity for all Americans. For now, however, the question is simply whether these children have any remedies under federal law. They do. Consequently, the district court must be reversed.

## CONCLUSION

This Court should reverse the district court's order dismissing Students' complaint and denying them leave to amend their complaint.

**Date: March 29, 2023.**

> */s/ David S. Ballard*
> DAVID S. BALLARD
> Georgia Bar No. 635107

**BALLARD LAW OFFICE, LLC**
113 Glynn Street South
Fayetteville, Georgia 30214
Tel: 770-461-4222
Fax: 770-461-8420
dballard@ballardlaw.us

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitations of Fed. R. App. P.

   32(a)(7)(B) and Fed. R. App. P. 29(d) because it contains 10,888 words,

   excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii),

   as calculated by the word-counting feature of Microsoft Word.

2. This brief complies with the typeface requirements of Fed. R. App.

   P.32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)

   because it has been prepared in a proportionally-spaced typeface using

   Microsoft Word in 14-point Times New Roman.

Dated: March 29, 2023

**BALLARD LAW OFFICE, LLC**

*/s/ David S. Ballard*_____
**DAVID S. BALLARD**
Georgia Bar No. 635107

**48**

## CERTIFICATE OF SERVICE

I certify that on this 29th day of March, 2023, I caused ***Appellants' Opening Brief***

to be filed electronically with the Clerk of the Court using the CM/ECF System,

which will send notice of such filing to the following registered CM/ECF users:

Michael M. Hill, Esq.
Wayne Steven Melnick, Esq.

Counsel for Appellee

*/s/ David S. Ballard*
David S. Ballard
Attorney for Appellants
Georgia Bar No. 635107