[PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 22-14234

_____

A.W. BY AND THROUGH J.W.,
E.M. BY AND THROUGH B.M.,
M.F. BY AND THROUGH J.C.,
D.G. BY AND THROUGH D.G.,

                                           Plaintiffs-Appellants,

*versus*

COWETA COUNTY SCHOOL DISTRICT,
CHRISTI HILDEBRAND,

                                           Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 3:21-cv-00218-TCB

_____

Before WILLIAM PRYOR, Chief Judge, and JILL PRYOR and BRASHER, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether Title II of the Americans with Disabilities Act allows the recovery of damages for emotional distress, *see* 42 U.S.C. § 12133, and whether several special education students alleged a constitutional violation against a principal and school district. The students alleged that the principal and school district violated Title II when the students' teacher physically and emotionally abused them. They also alleged that the principal's deliberate indifference violated their constitutional right to due process. The district court dismissed the students' complaint. It correctly ruled that emotional distress damages are not recoverable under Title II, but it erred when it failed to consider whether the students might be entitled to other relief. It also correctly ruled that the students failed to state a constitutional violation against the principal and the school district. We affirm in part, vacate in part, and remand for further proceedings.

## I. BACKGROUND

We draw all facts from the students' proposed amended complaint. The Coweta County School District operates Elm

Street Elementary School in Coweta County, Georgia. The school district is a public entity under the Americans with Disabilities Act, *see id.* § 12131(1). Dr. Christi Hildebrand served as the principal of Elm Street in fall 2019. A.W., E.M., M.F., and D.G. attended Elm Street as students in fall 2019 and were assigned to the same special education classroom. The students have disabilities that affect their ability to communicate to varying degrees.

A.W. was 12 years old in fall 2019. He has several disabilities, including developmental delays that affect his cognitive abilities and language skills. He is "verbal but non-communicative." He also has Dravet Syndrome, a rare and severe kind of epilepsy that is difficult to control.

E.M. was 11 years old in fall 2019. He has autism and suffers from social delay and learning disabilities. He is verbal, but he has limited social understanding and a limited ability to communicate. In 2022, E.M. was an eighth-grade student with the cognitive ability of a second grader.

M.F. was 10 years old in fall 2019. She has Down Syndrome and autism. She also has a heart condition and is legally blind. She is verbal but has limited communication skills.

D.G. was seven years old in fall 2019. She is "fairly verbal" but needs special education and was awaiting a formal diagnosis when this suit was filed. D.G.'s mother described her as "a slow learner."

Hildebrand hired Catherine Sprague to teach the students in fall 2019. Sprague had never served as a lead teacher and had never

been responsible for a classroom of students with moderate to significant disabilities. Sprague also did not have a special-education certification. The Georgia Professional Standards Commission required Sprague to pursue additional instruction and training to remain in her position.

Throughout fall 2019, the students' parents saw signs that their children had become frightened by school and that Sprague was not managing the classroom well. For example, A.W. resisted going to school and started acting "mean and defiant" in ways that were out of character. He frequently came home from school with clothing "soaked in urine or soiled with feces." Similarly, M.F. became "increasingly unhappy" with school and said for the first time that she "did not want to be there." M.F. also came home with her clothes "often soaked with urine or soiled with feces." She returned home one day with marks around her neck. She stated that she had been "choked" by one of her classmates, but her parents were never notified about an incident. D.G. told her mother that she was spanked at school and that Sprague had locked her in the bathroom for "time out." D.G. explained that Sprague placed her foot on the door so that D.G. was trapped inside. On one occasion, D.G.'s mother visited D.G. at school and observed a paraprofessional "holding down D.G. with a very angry look on her face." E.M.'s mother believes that E.M. did not tell her about Sprague's conduct because he feared that his mother would remove him from the class and that he would be unable to see his friends. At least one parent contacted Hildebrand during the fall to express concerns about the classroom environment.

Nicole Marshall, a paraprofessional assigned to work with Sprague, observed problems in the classroom. On October 2, 2019, Marshall saw Sprague "slap" M.B., a student not party to this action. When M.B. cried, Sprague called her "ridiculous" and a "bully." On December 5, 2019, Marshall saw Sprague place her hands around M.B.'s neck and move her head "back and forth aggressively." On a different occasion, when M.B. had an accident, Marshall saw Sprague call her "a disgusting animal and a baby who will never have friends." On December 6, 2019, Marshall saw Sprague grab D.G.'s shoe and throw it at M.F., striking M.F. in the face. On December 13, 2019, Marshall saw Sprague "threaten[] to punch an autistic student." On December 16, 2019, Marshall saw Sprague "pinch [a student's] inner forearm." Marshall reported Sprague's conduct to Hildebrand on December 6, 10, 11, 12, and 16, 2019.

State law requires school administrators with reasonable cause to suspect that child abuse has occurred to report the suspected abuse to authorities "immediately, but in no case later than 24 hours from the time there is reasonable cause to believe that suspected child abuse has occurred." GA. CODE § 19-7-5(c)(1)(I), (e)(2). Hildebrand contacted law enforcement about Marshall's allegations on December 18, 2019. School officials also notified the students' parents about the reports on December 18, 2019. In January 2020, the district superintendent acknowledged that Hildebrand failed to report the abuse allegations as promptly as state law required. Hildebrand was suspended for two days without pay and was required to undergo training about the reporting requirements.

The students sued the school district and Hildebrand. Their complaint alleged violations of the students' right to due process, *see* 42 U.S.C. § 1983; violations of Title II of the Americans with Disabilities Act, *see id.* § 12132; violations of section 504 of the Rehabilitation Act, *see* 29 U.S.C. § 794; and negligence, *see* GA. CODE § 19-7-5. The students sought "damages for mental anguish and pain and suffering" and special damages for the federal claims, as well as punitive damages from Hildebrand under section 1983.

A few months after the students sued, the Supreme Court held in *Cummings v. Premier Rehab Keller, P.L.L.C.*, that emotional distress damages are not recoverable under section 504 of the Rehabilitation Act. 142 S. Ct. 1562, 1576 (2022). The school district and Hildebrand then moved to dismiss the students' complaint for failure to state a claim. *See* FED. R. CIV. P. 12(b)(6). They argued that because Title II incorporates the damages and other remedies provision of the Rehabilitation Act, *Cummings* foreclosed recovery of emotional distress damages under Title II. They also argued that the complaint failed to state a constitutional violation by either defendant and that Hildebrand enjoys qualified immunity.

After obtaining an extension to file a response, the students moved for leave to amend their complaint and attached a proposed amended complaint. The students argued that the proposed amended complaint cured any previous defects. They acknowledged that *Cummings* foreclosed recovery under the Rehabilitation Act but argued that the decision did not foreclose damages for emotional distress under Title II. They also argued that the

amended complaint alleged a violation of the right to substantive due process against the school district and Hildebrand and that Hildebrand is not entitled to qualified immunity.

The district court dismissed the students' complaint and denied the motion to amend as futile. It ruled that after *Cummings* the students could not recover damages for emotional distress under Title II because Title II expressly incorporates the remedies of the Rehabilitation Act. It also ruled that the students had failed to state a constitutional claim against Hildebrand and alternatively that she was entitled to qualified immunity. It dismissed the constitutional claim against the school district. And it declined to exercise supplemental jurisdiction over the negligence claim.

## II. STANDARD OF REVIEW

We review *de novo* a dismissal for failure to state a claim, accept the allegations in the complaint as true, and construe them in the light most favorable to the plaintiff. *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016).

## III. DISCUSSION

We divide our discussion into two parts. First, we explain that, although damages for emotional distress are unavailable under Title II, the district court erred when it dismissed the students' claim without considering whether they might be entitled to other relief. Second, we explain that the students failed to allege constitutional claims against Hildebrand and the school district.

| 8 | Opinion of the Court | 22-14234 |
|---|---|---|

### A. Title II Does Not Allow Damages for Emotional Distress, But the District Court Erred by Failing to Consider Whether the Students Could Seek Other Relief.

The students argue that the district court erred when it ruled that damages for emotional distress are unavailable under Title II. Although the students acknowledge that *Cummings* held that emotional distress damages are unavailable under the Rehabilitation Act, they argue that the rationale of *Cummings* does not extend to Title II because Congress enacted Title II under Section Five of the Fourteenth Amendment, not the Spending Clause. But precedent forecloses that argument. Yet the district court erred when it failed to consider whether the students could seek other kinds of relief.

Title II expressly incorporates the remedies of the Rehabilitation Act: the "remedies, procedures, and rights set forth in" the Rehabilitation Act, 29 U.S.C. § 794a, are the "remedies, procedures, and rights" that Title II "provides to any person alleging discrimination on the basis of disability in violation of section 12132," 42 U.S.C. § 12133. The Rehabilitation Act, in turn, incorporates the "remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964." 29 U.S.C. § 794a(a)(2). So the remedies available under Title VI are the same remedies available under the Rehabilitation Act and Title II.

Damages for emotional distress are not recoverable under Title II. Because *Cummings* held that "emotional distress damages are not recoverable" under the Rehabilitation Act, 142 S. Ct. at 1576, it follows that emotional distress damages are not

recoverable under Title II, which provides the same "remedies, procedures, and rights" as the Rehabilitation Act, *see* 42 U.S.C. § 12133.

That Congress enacted Title II under Section Five of the Fourteenth Amendment does not matter. The students argue that *Cummings* does not limit the remedies available under Title II because it is not a Spending Clause statute. But the Supreme Court rejected that kind of reasoning in *Barnes v. Gorman*. *See* 536 U.S. 181, 189 n.3 (2002) That is, it rejected the argument that although punitive damages are unavailable under Title VI, they remain available under the Americans with Disabilities Act because it was not enacted under the Spending Clause. *Id.* The Court explained that the Americans with Disabilities Act "could not be clearer" that its remedies "are the same" as those of the "Rehabilitation Act, which *is* Spending Clause legislation." *Id.* And the incorporation of those remedies "make[s] discussion of the [Americans with Disabilities Act]'s status as a 'non Spending Clause' tort statute quite irrelevant." *Id.*; *see also Doherty v. Bice*, 101 F.4th 169, 174–75 (2d Cir. 2024).

*Barnes* requires us to read the remedies available under Title II of the Americans with Disabilities Act as mirroring the remedies under Title VI of the Civil Rights Act of 1964. *See Ingram v. Kubik*, 30 F.4th 1241, 1259 (11th Cir. 2022). In *Ingram*, the plaintiff sought to hold the defendant vicariously liable under Title II for discrimination against disabled people in his department. *Id.* at 1257. We held that vicarious liability did not apply under Title II

because "vicarious liability is unavailable under Title VI." *Id.* at 1258. The plaintiff argued that the unavailability of vicarious liability under Title VI did not control because Congress did not enact Title II under the Spending Clause. *Id.* at 1259. We ruled that *Barnes* "foreclosed" that argument. *Id.* So we must reject that argument here too.

The students argue, in the alternative, that the district court erred when it dismissed their Title II claim even if they cannot recover damages for emotional distress. The students contend that they should be allowed to seek other kinds of relief under Title II, including damages for physical harm, compensation for lost educational benefits, remediation, and nominal damages. We agree.

Requesting an improper remedy is not fatal to a claim. A complaint is sufficient if it alleges facts that establish that the plaintiff is entitled to any relief that the court can grant. *Hawkins v. Frick-Reid Supply Corp.*, 154 F.2d 88, 89 (5th Cir. 1946). That a plaintiff might misconceive his remedy does not warrant dismissal of the complaint unless he is entitled to "'no relief under any state of facts.'" *Kent v. Walter E. Heller & Co.*, 349 F.2d 480, 481 (5th Cir. 1965) (citation omitted). For example, in *Levine v. World Financial Network National Bank*, the district court dismissed a complaint because it sought damages for emotional distress. 437 F.3d 1118, 1120 (11th Cir. 2006). We reversed and explained that the complaint "stated a *prima facie* claim" and requested "all other relief that the Court deems just and appropriate"—a demand that encompassed

other damages available under the governing statute. *Id.* at 1123–25 (citation and internal quotation marks omitted).

Although these precedents pre-date *Bell Atlantic Corp. v. Twombly*, that decision did not disturb the rule that requesting an improper remedy is not fatal to a claim. *See* 550 U.S. 544, 555–56 (2007). *Twombly* replaced the "no set of facts" standard with the requirement that complaints must state "plausible" claims. *Id.* at 556, 561 (internal quotation marks omitted). But *Twombly* did not change the rule that a district court must consider whether a complaint that seeks an improper remedy might warrant another form of relief.

The Federal Rules of Civil Procedure confirm as much. Rule 54(c) states that a district court must "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings," when it enters any final judgment except a default judgment. FED. R. CIV. P. 54(c). As our sister circuit explained after *Twombly*, "'the selection of an improper remedy in the Rule 8(a)(3) demand for relief will not be fatal to a party's pleading if the statement of the claim indicates the pleader may be entitled to relief of some other type.'" *Dingxi Longhai Dairy, Ltd. v. Becwood Tech. Grp.*, 635 F.3d 1106, 1108 (8th Cir. 2011) (quoting 5 Charles Alan Wright & Arthur R. Miller, FED. PRAC. & PROC. § 1255, at 508–09 (3d ed. 2004)).

The district court should have considered whether the students might be entitled to other relief. The students' complaint requested that the district court grant "other and further relief" as it

"deems just and proper." The failure to consider that request was error. Although the parties dispute the availability of other relief, those arguments are better suited for the district court to consider first.

### B. The District Court Correctly Ruled that the Students Failed to State Section 1983 Claims Against Hildebrand and the School District.

The students also argue that the district court erred when it dismissed their claims under section 1983 against Hildebrand and the school district. To state a claim under section 1983, the students must allege that an act or omission, committed by a person acting under color of state law, deprived them of a right, privilege, or immunity secured by the Constitution or a federal statute. *See* 42 U.S.C. § 1983. At this stage, the claim need only be "plausible on its face." *Twombly*, 550 U.S. at 570. A claim is plausible when it "permit[s] the reasonable inference" that the state actor "is liable for the misconduct alleged." *Hoefling v. City of Miami*, 811 F.3d 1271, 1281 (11th Cir. 2016) (citation and internal quotation marks omitted).

The students allege that Hildebrand and the school district violated their right to due process of law. The Due Process Clause of the Fourteenth Amendment bars state officials from depriving "any person of life, liberty, or property, without due process of law." Although the text of the clause mentions only the process that must accompany a deprivation of certain rights, the Supreme Court has recognized a substantive component to this constitutional guarantee. *See Dobbs v. Jackson Women's Health Org.*, 142 S.

Ct. 2228, 2246 (2022). The students allege that Hildebrand was deliberately indifferent to Sprague's misconduct.

There are two plausible ways to understand the students' theory of liability. One theory considers Hildebrand liable as Sprague's supervisor because she was deliberately indifferent to Sprague's misconduct. The other considers Hildebrand independently liable based on her deliberate indifference to the misconduct. We need not decide which theory the students advance because both fail as a matter of law.

Both theories would require the students to prove that Sprague violated their right to substantive due process. A supervisor is liable for a subordinate's constitutional violation only if she "personally participates in the alleged unconstitutional conduct" or causes the constitutional violation. *Christmas v. Harris County*, 51 F.4th 1348, 1355 (11th Cir. 2022) (citation and internal quotation marks omitted). That is, Hildebrand is liable as Sprague's supervisor only if she participated in violating the students' rights or caused them to suffer a violation at the hands of Sprague. Students are in a noncustodial relationship with the state. *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1329 (11th Cir. 2020). In that setting, "conduct by a government actor" violates substantive due process "only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003). So Hildebrand's liability as a supervisor turns on whether she participated in or caused conscience-shocking conduct, and her independent liability turns on

whether her alleged deliberate indifference to the alleged abuse shocks the conscience. We have never held that an official's deliberate indifference in a noncustodial setting can shock the conscience. *Hernandez*, 982 F.3d at 1331. Indeed, even allegations of intentional misconduct seldom shock the conscience. *Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1378 (11th Cir. 2002).

Our precedent makes clear that Sprague's alleged abuse did not violate the students' right to substantive due process. We have held that a similar complaint that a teacher abused a disabled student did not shock the conscience. *See T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cnty.*, 610 F.3d 588, 598–603 (11th Cir. 2010). In *T.W.*, a special education teacher engaged in excessive corporal punishment and verbal abuse and physically abused a student without any disciplinary purpose. *Id.* at 598–99. The corporal punishment included twisting the student's arms behind his back, pinning him against things with her body, and even tackling him to the ground. *Id.* at 595–96. The teacher also tripped the student with her foot after releasing him from timeout. *Id.* at 596. That act served no disciplinary purpose. *Id.* at 599. We ruled that the shock-the-conscience standard governed the teacher's conduct. *See id.* at 598–99. And the lack of any serious bodily injury weighed against holding that the abuse violated that standard. *See id.* at 595–96, 599, 601. None of the allegations established a violation where the student suffered at most "transient pain." *Id.* at 599, 601.

In the light of *T.W.*, Sprague's alleged abuse does not satisfy the shock-the-conscience standard. "Only the most egregious

official conduct" shocks the conscience. *Hernandez*, 982 F.3d at 1330 (citation and internal quotation marks omitted). Although the students' complaint contains several allegations of abuse, only two allegations involved a party: Sprague allegedly struck M.F. in the face with a shoe causing her to cry, and Sprague allegedly spanked D.G. and locked her in the bathroom for timeout. Although troubling, these acts do not satisfy the shock-the-conscience standard. The complaint does not allege that any student suffered "anything more than transient pain." *See T.W.*, 610 F.3d at 601.

The Supreme Court has cautioned against judicial expansion of rights to substantive due process "because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). We "take seriously" those warnings, *Waddell*, 329 F.3d at 1304, especially when asked to expand substantive due process "into areas of conventional tort law," *Nix*, 311 F.3d at 1376. Allegations of a teacher's intentional abuse are ordinarily the province of state tort law. *See Lawson v. Bloodsworth*, 722 S.E.2d 358, 359–60 (Ga. Ct. App. 2012) (reversing summary judgment for teacher on student's battery claim because the record reflected that the teacher might have intentionally thrown a chair at the student). Sprague's alleged abuse does not warrant supplanting state tort law and exceeding the limited contours of the shock-the-conscience standard.

Because Sprague's alleged abuse did not violate the students' constitutional rights, Hildebrand and the school district also did not violate them. Hildebrand did not participate in or cause a

constitutional violation as Sprague's supervisor. *See Christmas*, 51 F.4th at 1355. Hildebrand's alleged deliberate indifference also cannot independently shock the conscience when Sprague's alleged abuse fails to satisfy that standard. And the students' failure to allege that Sprague or Hildebrand violated their constitutional rights defeats their claim against the school district. To state a claim against the school district under section 1983, the students must allege that a policy or custom of the district caused a constitutional violation. *See Bd. of Cnty. Cmm'rs v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell v. Department of Soc. Services*, 436 U.S. 658, 694 (1978)). Without an underlying constitutional violation, we need not consider whether the school district had a policy or custom that caused one.

## IV. CONCLUSION

We **AFFIRM** the dismissal of the section 1983 claims, **VACATE** the dismissal of the Title II claim, and **REMAND** with instructions for the district court to consider in the first instance whether the students may be entitled to any relief under Title II.